The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Thomas M. Harris presiding. Good afternoon. This is the last case of the day. It's case number 4-22-0887, People v. Raymond Maury. Could we have appearances, please? First, for the appellant. Ryan Wilson for Raymond Maury, the appellant. Thank you. And for the appellate? First name, Allison Page. Last name, Brooks, on behalf of the people. Okay. Thank you. Mr. Wilson, you may proceed with your argument. Thank you, Your Honor. May it please the court, counsel. Good afternoon, Your Honors. My name is Ryan Wilson, and I represent Raymond Maury on behalf of the Office of the State Appellate Defender. I plan to focus my argument on Issue 1 of the opening brief today and also on the argument raised in the supplemental brief. Certainly, if this court has questions regarding any of the other arguments, I'm happy to answer those. In Beck v. Ohio, the U.S. Supreme Court cautioned against simply relying upon the good faith of police officers when it comes to the right of the people to be secure in their persons, houses, papers, and effects. It follows, then, a police officer must have reasonable and articulable suspicion of an offense in order to effectuate a traffic stop. And in People v. Haddad, a case very similar to the one that we're discussing today, it involved a claim of the defendant following too closely, the court stated, when judging the reasonableness of a traffic stop, courts must apply an objective standard and scrutinize whether the facts available to the officer at the time of the stop warrant a reasonable person to believe that the traffic stop was appropriate. Essentially, these cases demonstrate that an officer's belief, the reason for a stop, can be challenged by a defendant. And that's exactly what defense counsel was trying to do here. Mr. Morey was stopped off of the interstate for allegedly following a vehicle too closely. And there's a statute that applies in such a case. It prohibits a vehicle from following another more closely than is reasonable and prudent, having due regard for the speed of each vehicle, the traffic, and the highway. There was a motion to suppress filed in this case challenging the traffic stop. And during a hearing on that motion, the officer who stopped the defendant explained that he thought that the following distance of five to six car lengths would be appropriate. Unfortunately, we have an important piece of evidence here. We have the officer's dash cam. It provides a recording, an objective view of what actually happened in the instant case. And it demonstrates that when the officer pursued Mr. Morey and finally pulled him over, he told Mr. Morey that he was stopping the defendant because when he passed the officer who was sitting in the median, Mr. Morey was approximately one car length behind a semi and did not maintain a safe following distance once the officer began his pursuit. Defense counsel, however, did something that even the circuit court thought was kind of unique. He took the officer's dash camera and sent it to a videographer who was able to determine exactly how far Mr. Morey was from the semi at various points. Mr. Wilson, can I just ask a question in this regard? In terms of where the video first starts, can you tell us when it starts in relation to where defendant's vehicle was relative to the trooper's vehicle? If I understand your question correctly, Justice Harris, the video starts before the semi-truck that Mr. Morey was allegedly following appears on the screen. The semi-truck appears on the screen, Mr. Morey's vehicle is then visible following the semi-truck at some distance. The officer when he Can I stop you again? I just want to know that the trooper's vehicle is in the median, right? Correct. The traffic's going southbound. Semi passes and then the defendant's vehicle passes, right? That's correct. Okay. Is that captured on video when the vehicles pass the trooper's location? It is. In fact, Justice Harris, in the appendix to the opening brief, I have added not only screenshots of that very point that you're speaking about right now, but also the demonstrative exhibits that defense counsel put together demonstrating the distance Mr. Morey was following the semi at that point. Okay, thank you. So when the trooper, Hefner DeWitt, approached Mr. Morey's car after stopping him, he told Mr. Morey that the traffic stop was necessary because Mr. Morey was approximately a car length behind the semi when they passed trooper Hefner DeWitt who was sitting in the median. He also said that when Hefner DeWitt was pursuing Mr. Morey, he did not maintain a safe distance from the semi. As I just discussed with Justice Harris, I attached some demonstrative exhibits that counsel admitted in this case, and those exhibits demonstrate that at the time that Mr. Morey passed trooper Hefner DeWitt in the median, he was approximately nine car lengths behind the semi. Now this is far more distant than trooper Hefner DeWitt initially said of one car length behind the semi, and it is far in excess of what trooper Hefner DeWitt testified to as far as a safe following distance of five to six car lengths. We're fortunate to have the video in this case because it does give that objective view of what happened in this case and serves as a check on Hefner DeWitt's testimony regarding when he saw the infraction in this case. During the hearing on the motion to suppress, and for the first time, Hefner DeWitt added that there was an entirely different point when he believed that Mr. Morey was following the semi too closely, and that was when he first saw Mr. Morey's car. The state has cited to that to say that there's nothing wrong with what happened here and that the motion to suppress was properly denied. The problem with that argument is it assumes a few things. We have the dash cam video of trooper Hefner DeWitt's discussion with Mr. Morey, and in that video he says nothing about seeing Mr. Morey following too closely down the interstate when he was required to say that. He wasn't required to say that, but I think it goes to his credibility. Certainly, is that what trial judges call whether it goes to his credibility or not? It is, although credibility is something that this court can also look at and can also weigh, and we should second guess the trial judge's determination that the trooper was credible. Well, where there is demonstrative evidence that provides an objective view of what happened here that is so inconsistent with what the trooper testified to, I don't believe that that would be inappropriate. You have the trooper saying that when Mr. Morey passed him in the media, Mr. Morey was approximately a car length behind the semi, and we have videotape evidence that is a reliable neutral observer to what happened here demonstrating that Mr. Morey was in fact far, much farther behind the semi than that. Approximately... There's a question whether given the speed and the presence of the truck and the defendant's car, whether he was traveling too closely, and the question whether the officer had probable cause to believe a reasonable grounds to suspect that that offense had been committed. It roughly is. The problem is in this case, the officer gave us a matrix for when that offense occurs, and the officer said it would be if he had a following distance of five to six car lengths, that that would be reasonable under the circumstances. Here, this objective evidence shows that Mr. Morey was far further behind the semi than what the officer said would be appropriate. It demonstrates that Mr. Morey was indeed driving appropriately. Isn't the evidence presented by defense counsel better attuned to a defense that the state can prove the charge beyond a reasonable doubt as opposed to whether or not the officer had reasonable articulable suspicion to stop the vehicle? I don't believe so, and that goes back to this Haddad case that I cited at the outside of my argument, another case that discussed an offense of following too closely where the court said, and I won't read the quote again, but essentially that given the circumstances, the stop would have to be appropriate as viewed by a reasonable person. And while Hefner DeWitt did testify regarding the stop in this case, it is not something that can be overlooked that he didn't testify accurately, and we know that because we have the video. It is that neutral observer to what happened here that isn't subject to manipulation or mistake, like seemingly true for Hefner DeWitt's testimony was. You've handled lots of cases. Have you ever seen the carrying out a motion to suppress where the defense presented the kind of evidence and detailed analysis the defense attorney, Mr. Morris, presented in this case? I have not. Should we find it at all curious that nonetheless, one of the issues at appeal here is whether or not Morris provided ineffective assistance of counsel, at least as far as your client wishes the matter to have been argued? Well, it all depends on the extent of the ineffectiveness. Counsel can properly litigate a motion to suppress and then make a trial error or an error for failing to, for example, call a witness during the suppression proceedings that still demonstrates that he was ineffective. The fact that counsel does something right and goes the extra mile doesn't necessarily mean that there's no ineffectiveness here. And incidentally, and I'm hopping ahead a little bit, but incidentally, this was one thing that this court looked at during the earlier appeal. This was a case where Mr. Morris made a crankle claim. This court viewed that crankle claim and with the state's concession found that trial counsel was ineffective for failing to file an additional motion to suppress. That motion to suppress was filed beyond the time limit that the court had given defense counsel to file that motion. And during an initial preliminary crankle inquiry, Mr. Morris said essentially, yeah, that's my fault. I should have done that. He had all of the information. If counsel litigates one part of a motion to suppress correctly and then completely drops the ball on another part of the motion to suppress that could end the case altogether, I would say that that's ineffective. So I have no problem with on one hand saying that Mr. Morris did an admirable job of getting this evidence on Mr. Morris' behalf and also acknowledging what Mr. Morris himself has acknowledged. Before I turn it over to other matters I want to ask you about, the defendant in this case was convicted of violating section 401 ATC of the Controlled Substances Act. It says it's a class 6 felony when the defendant possesses more than 400 grams of a controlled substance. The trial court noted that the defendant possessed 500 grams of cocaine when he was arrested, 100 grams more than the minimum amount prescribed by the statute. Why isn't that a factor which the court can take into consideration in imposing a sentence as opposed to just 400 grams? Why isn't the increased 100 grams a factor which the court can say this is bad or worse etc? The statute that you cite is part of kind of an accelerated sentencing scheme for different quantities of a controlled substance. Mr. Morris possesses 400 and 899 grams of cocaine. It is inferred that the legislature thinks about things like the harm to the community when they're passing legislation and implementing a sentencing range and where an offense says that the defendant shall be sentenced to I believe it's 12 to 50 years for the specific offense for the possession of cocaine in the amount of 400 to 899 grams. We presume that the legislature has already thought about that harm to society when they pass that sentencing range and so the judge's consideration of that factor for a second time after the legislature had already considered the harm to society renders it a factor the court can't consider again. The legislature has already done that by implementing the increased sentencing range. So your argument is that it's improper for the court to consider when imposing a sentence that it was 500 grams of cocaine as opposed to 400? When it comes to the harm that that controlled substance poses to the community, yes. The legislature again has already determined that when they set the sentencing range and the court then should not be considering that for a second time and increasing the punishment. So this court has repeatedly suggested starting with at least the Hibbler case that when we're getting an argument that the court has considered a factor inherent in the offense that the first question first point to consider is what's the minimum conduct necessary to commit the offense? And here it's 400 grams and we made it clear in a bunch of cases that where it exceeds that for instance it might be an aggravated battery to cause great bodily harm and knock someone down break his jaw but if the defendant then proceeds to stomp on his head multiple times that's more than is required for the minimum to have the offense occur. Why doesn't that same analysis apply here? And I'm wondering if maybe we're talking about two different things and that may be the issue. My problem with the court's sentencing decision in this case is that the court tied it to the harm that the drugs caused to society. When she used that the judge used that as an aggravating factor that harm to society. Well wait a minute aren't you primarily arguing that the court considered a factor inherent in the offense? Wasn't that your primary argument? Yes that is that is the primary argument and the cases say that the legislature when they pass a sentencing range they consider themselves the danger that's inherent to the public and that's what I'm arguing the judge can't consider again. The judge can't say oh you had 500 grams of cocaine this is really bad for the community. Well why isn't it the same thing as the aggravated battery argument he broke his jaw and he hit him therefore the fact that he stomped his head repeatedly after that can't be considered by the court imposing sentence. Isn't that your same argument? It's not because I think in your hypothetical there's actually a manifestation that the court can rely on to show that the punishment should be increased. I think my argument would be much more difficult to make if it were a situation where when officers found Mr. Morey he had 500 little baggy gram baggies of the cocaine showing that he wanted to distribute it to every single person that he possibly could. That's not the the fact we have here we don't have anything showing that his 500 grams of cocaine are inherently any more dangerous than the 400 grams that the legislature had as a 899 grams that the legislature made as a maximum for this offense. One of the other things I want to ask you about before your time is up is your reliance on the second district's decision and downs. Yes your honor. Both for the proposition that council is duly bound to assert all non-frivolous arguments that the defendant wants him to assert Crankle counsel. And as you know we're not bound to follow bounds and my question is do you know of any other instance where the standards for ineffective assistance of counsel set forth in Strickland don't apply except for what the second district said in Downs? I don't know of a situation like what you're mentioning other than the cases that are following Downs. But there's only one other second district case I believe, Kyle's. So Downs and Kyle's wouldn't they be correctly deemed the cases that don't follow Strickland versus Washington and its progeny in every other case in every other situation isn't that standard to be followed on asking the question was trial was counsel ineffective? I don't believe so and I've got a couple reasons for that. Downs was decided about seven and a half years ago that case was also a petition for leave to cases that have cited to Downs since that time and incidentally as a matter of candor to the court and to opposing counsel I just want to note that as I was preparing for this argument today I noted that in my supplemental reply I cited to a 2018 unpublished rule 23 order by accident. That was completely unintentional and I understand that that's not persuasive authority at all. I apologize to the court for that but that aside there have been numerous cases that have cited to Downs approvingly and where Downs I think becomes very important is the realization that oftentimes you have counsel that is stepping in many times to a very difficult case like Mr. Morris for example and they're having to take up his mantle. This isn't like a case of guilty plea proceedings for example where there's some certification that counsel files saying I've read all the transcripts I've you know researched this case fully I've talked to the defendant I've raised all of his claims. There is no requisite showing in this in this case demonstrating that counsel did all of the things that he was supposed to do and so I think it follows that counsel who's appointed to represent a defendant during a crankle evidentiary hearing isn't acting as an advocate for the state or the court. That attorney is acting as an advocate for the defendant and it may be difficult for that advocate to do to look at the defendant's claims in detail and affirmatively figure out what claims have merit and what claims don't. Now certainly the advocate shouldn't be raising claims that are frivolous that's one of the guardrails that is present here but the court has said in Downs and in Kiles that it is incumbent upon defense counsel to raise any claim that is colorable on the defendant's behalf and let the court decide whether that claim is actually meritorious to act as an advocate for the defendant and I think that's completely appropriate in a situation where counsel oftentimes is stepping into a large case and having to figure out what issues to raise on the defendant's behalf. Mr. Wilson you are out of time. Oh I'm sorry. Justice Steinman do you have any follow-up for that? No thank you. Okay thank you. Ms. Brooks you may proceed with your argument. Thank you your honors. May it please the court and counsel with respect to the lawfulness of the stop if I try to distill what appears to be the defendant's claim is that because one of the angles I guess on the dash cam video which was analyzed by a defendant's videographer appears to show the cars at a wider distance than the defendant's vehicle in the truck that he was behind at a wider distance than the infraction witnessed by the officer which occurred prior to the defendant's car getting towards the officer's spot in the media and that that affects the officer's credibility and therefore essentially that the trial court's findings I all against the manifest way to the evidence and the state believes though is according to the defendants I'm sorry the trial court's finding that the officer testified very credibly and of course the what was appeared on the video itself is not going to rebut what the officer saw with his own eyes prior to the point where the car gets passing the officer in the media so therefore when the officer says that that was a couple car lengths maybe but not even a car length and a half behind a semi and that's an infraction that was witnessed by the officer's own eyes not on video but in the officer's own view prior to the defendant and the truck reaching the officer's position the median and if the officer testified very credibly according to the trial court that's the type of thing that this court it would be very difficult for a reviewing court to overrule a trial court's credibility determination that's one of the hardest things to do for as a a party who is appealing a trial court's credibility determination and here because the video doesn't measure the car lengths at the time of the actual infraction and I understand the defense making a point that well the officer told the defendant something differently like about the infraction occurring at the time they passed the car past the officer's position but but that would go only to sort of in some small way the officer's credibility but could have just been what the officer chose to tell the defendant not actually what the officer witnessed so it doesn't necessarily mean the officer's lying about witnessing the defendant's car only like a car length and a half behind a semi-truck which is it's unreasonable to follow a semi so closely I mean people have been decapitated by semi trucks going their cars underneath the trailer for example it's very important to a safe distance when following at highway speeds if an if a truck has to very quickly decelerate you don't want to be like only a car length and a half behind a semi-trailer so that is a type of it's a very reasonable thing for the for the officer to to witness this traffic violation and to make a stop to issue a warning for this so therefore it's not a situation where the officer's making some sort of unreasonable objectively unreasonable mistake in in what they're seeing what they saw was subjectively reasonable and credible and the record is insufficient to overrule those determinations and so also I think the prosecutor argued that basically what was apparent on the video was that the defendant appeared to be slowing down which is a reasonable thing for people to do as they approach an officer in the median particularly if they're hauling a half of you know 500 grams or half a kilo of cocaine in their car you're not going to want to get pulled over for speeding so if you see an officer in the meeting you're probably going to pump the brakes and so therefore if the if the falling too closely infraction is before the officer the defendant gets to the officer's position in the median and if the defendant is inferred sees the officer in the median knowing he's got a half a kilo of cocaine in his car he's going to want to slow down so that's going to create more distance between the defendant and the truck by the time they actually reach the officer's position so that argument I think also would support the idea that there's this discrepancy the defendant is identifying between the infraction itself which happened before the defendant reaches the officer's position and what was apparent on the camera in front of the officer as the off as the defendant goes by if that that's a widening gap because as it should be apparent on the video the defendant is actually slowing down relative to the truck and therefore is gaining more distance between the two vehicles so for that reason the defendant's motion to express was properly denied and with respect to the issue on downs well I'm not sure exactly what if the if the claim is the defendant is not getting his sixth amendment right to counsel under Strickland or if he's violating some sort of like Illinois common law Frankel rule if if downs is sort of expounded on a common law rule under Frankel see the supreme law of the land is the sixth amendment the U.S. constitution and any Illinois common law rule that violates that sixth amendment right of a defendant's ability to receive effective counsel and because under Strickland there is the constitutionally protected right of independence of counsel and as has been recognized since time beyond memory one of the most effective things a counsel can do is whittle winnow out losing and poor arguments and a standard that would require a attorney who in a critical stage defendant has a right to effective assistance of counsel to handcuff them and force them to present as many as barely non-frivolous potentially numerous claims and present those on the defendant's behalf is is taking away a lot of the experience and skill that an attorney would have in terms of focusing their their limited time in court on the strongest arguments that might have the best chances of winning. Ms. Brooks in advance of this argument have you formulated any worst case scenarios that you can imagine that would put defense counsel in a bad position or excuse me that would put the defendant in a bad position sixth amendment wise if counsel had to present to the court all non-frivolous claims can you just give us a for example well I mean it could be like 40 barely non-frivolous claims I mean something that is non-frivolous could be something that's still completely foreclosed by existing law but it would just require the attorney to make a argument for the good faith argument for the reversal of existing law so the L.A. Supreme Court could have come out like last year and said that this argument is a loser but if as long as you have a good faith basis to say that well that should be reversed maybe the U.S. Supreme Court might reverse it or something to have to take up issues like that sure losers I mean an attorney's experience there's no reason to waste limited court time and their own efforts their own limited time particularly if it's an appointed attorney who may have limited resources due to the demands of many other cases to expend these sort of limited resources in court time and their own ability to do their own job with heavy caseloads for example it's just a type of ruling that actually hurts defendants that's why I don't understand that a rule that would take away the constitutionally guaranteed independence of defense bar should be definitely should be complaining about here because the sixth amendment says that this is something that you can't create strict rules that limit how an attorney can do their job is there any room any leeway to read downs as saying uh council doesn't have to include all non-frivolous claims uh or do you think that the uh the downs essentially stands for that proposition that uh crankle council has to include all non-frivolous claims that the pro se defendant has raised that that's what I that's how I read it is that regardless of the the lack of likelihood of potentially winning I mean something can be non-frivolous it doesn't mean it has any chance of winning and it's a waste of time and resources to try to pursue many non-frivolous claims particularly when doing so might harm the defendant because here it's trying to give the defense the ability to use their own skill and experience in arguing the best case possible to get their client the relief they want and hamstringing them by requiring them to make any non-frivolous claim is is actually hurting defendants and that's why I guess um this sort of rule is I see it more as like an extension of a common law crankle doctrine not like an actual sixth amendment requirement because it's not a sixth amendment requirement it actually is against the six amendments independence of council um so that's why I guess if it is treated as a an extension of the common law crankle doctrine for just purposes of Illinois law only but this is actually incongruous with the sixth amendment that's why it should not be followed. Brooks I have a question about uh Downs and Kiles it's my understanding that those are the only two opinions from the second district which hold what Downs said which I think you've correctly described and Kiles which followed it are there some other opinions out there that I'm that you're aware of or is this when Mr. Wilson talks about other things that are followed are these various rule 23 orders? I'm not sure personally like specifically what other like rulings I mean but if they are published decisions um presumably they're going to be cited by other courts going forward and so I don't find any which is why I'm asking I'm not sure personally but I mean I wouldn't be surprised if there had been because if they if they are the only cases out there and there's no other case like that goes against it because I haven't seen an argument made that this somehow takes away the constitutionally protected independence of counsel and actually could be a bad thing for defendants and prevent them from receiving effective assistance of counsel that's why these sort of restrictions can actually deprive a defendant of their sixth amendment right to effective counsel. It may not be in like this particular case that the restriction might but I mean in some case it will where I'm not sure if this is case but some case that will actually probably that the argument could be that that this limitation somehow denied the defendant their sixth amendment right to effective counsel by forcing their attorney to make all these four arguments um and and so I that's why I guess it's just got to be very careful this court needs to be careful about just following downs without considering the very strong sixth amendment interests of defendants and having independent counsel make judgments about winnowing out four arguments and trying to you know present their best possible case to get their client the relief they want. I asked Mr. Wilson about the 500 grams of cocaine versus the 400 which is the minimum for class x felony sentencing you heard his response what are your thoughts about that? Well your honor it's the situation that the rule against considering factors inherent in crime is not to be applied rigidly and so the courts have always been allowed to consider degrees of of seriousness in within an element so like the example could be the extent of great bodily harm when great bodily harm is inherent in a crime there's varying degrees amounts of great bodily harm from just the bare minimum to to more and here there's a wide range of of grams that apply in this particular crime but also there's a very wide range in sentencing too so it's the type of thing where the fact that there's more grams here means that this particular substance can be divided up into more doses and the more doses that go out from this particular set of substance can mean that there is potentially a lot more harm to the community so the extra 100 grams divided into further doses reaching potentially more people is definitely a consideration that the trial court can make because the rule against considering inherent factors is not rigid and you can always consider the nature and extent of elements and so that's why the defendant's issue is is his objective to this on appeal here is not well taken and so the only thing i wanted to mention is about the the right to testify at a suppression hearing i know defendant types uh besides cases like about welfare benefits um obviously defendant has a right to testify in support of their own case at a trial um because like the kruger case from colorado and there's not a whole lot of authority on this i couldn't find any illinois type authority um but a defendant who a defendant does not have a right to suppression hearing essentially if this is a trial court and trial counsel trial counsel has a strategic decision of whether to file a suppression motion or not so there has to be grounds for it for example um so that because it's a matter up to the trial court whether or not to even file a suppression motion therefore it's not a defendant's absolute right to testify over the trial court's decision at a suppression hearing so that's why this is treated differently by most courts compared to um for example a defendant's absolute right to testify at their own trial so that's the distinction there's not a lot of great authority um like for example the premise jurisdiction that can be cited onto that point um but at least the state has cited a case from colorado that said that the most of the courts have ruled um the defendant does not have an absolute right to testify at their own suppression hearing have our absolute rights testified any pre-trial proceedings i'm sorry i missed the beginning of that question does the defendant have an absolute right to testify if he wishes in any pre-trial proceedings as he has the right as we know to testify if he chooses at his trial well i haven't researched uh other types of pre-trial proceedings other than a suppression hearing and i think because the reasoning is that a defendant does not have a right to have an actual suppression motion that's a matter within council's authority whether or not to file so i'm not sure like a um a preliminary hearing for example where a defendant has a statutory right for a preliminary hearing um that that may be a different situation than a case where here it's up to the trial council whether or not to file the suppression motion the first instance so i think because the reason for that rule is because it's up to council to file a motion or i'm not sure about other other pre-trial hearings i've not researched that question and so um i would just request this court to um affirm the convictions and sentence and thank you for your time okay thank you miss brooks uh mr wilson rebuttal argument yes thank you your honor um just one quick point about the traffic stop in this case i understand that the state wants to rely on the officer's testimony that he saw mr maury's vehicle such a far distance away that it wasn't even recorded on the officer's dash cam wide-angle lens the problem with the officer trying to discern whether mr maury was following too close at that time is that it was from such a far distance that if the officer can't reliably say how close mr maury was to the semi at the point when mr maury was crossing right in front of the officer who was sitting in the median i don't know how the officer can say reliably whether mr maury was six car lengths or 19 car lengths behind the semi when he initially first saw mr maury's car so this is a matter of common experience uh we're all familiar with driving interstate highways and from uh three blocks away maybe even a half a mile away i could see a car driving too close to a truck behind it but you know which might very well find a dash cam that they picked up on the dash cam why why is uh the trial court required apparently according to you to reject that testimony because you're absolutely correct it is a matter of common experience but if you made that observation and then came into court and said uh that car was right on the truck's bumper and then they introduced a video showing that the car was nine car lengths behind the truck at that same time it does undermine the credibility of the officer who supposedly is trying to gauge all of this that that's all i'm to resolve in other words if it were the exact same time maybe the trial court would have had more questions with the uh credibility of the officer the trooper than uh he resolved and the court had i don't think i caught the first part of that question how do we know it's the exact same time seems to me that that's one of the things that the trial court uh could conclude the officer saw this before the dash cam picked it up and arguably the the problem with that is uh the court uh sustained the state's hearsay objections when counsel was trying to cross examine the officer using the officer's probable cause statement that in part noted when he saw the infraction counsel pausing there for a moment clearly aren't those all correct rulings they were all hearsay in other words if counsel wanted to uh impeach the officer with a prior inconsistent statement there's a way to do that it's not to offer the statement you ask them about it they said that how it works well for the purposes of something like a motion to suppress a pre-trial proceeding the only rules of evidence don't apply and so the the attorney can introduce hearsay testimony without there being a sustained objection so and that's really the part of the in this case the court really didn't give the defense a fair shake to fully litigate this claim before my time runs out i do want to touch on the uh downs uh portion of the argument i understand that when a court decides a case they have to think about how their precedent is going to be used uh what other courts are going to rely on that precedent and how do they implement the logic they want to implement while also deciding the case that is currently pending in front of the court i know this court from this argument has questions about downs but what i would point this court back to is what the court ordered in its order remanding mr maury's case to the circuit court it ordered there to be the appointment of counsel for counsel to investigate and present mr maury's claims of ineffective assistance of counsel when we got to the evidentiary hearing following that crankle remand after the state conceded that morris was possibly neglectful of mr maury's case crankle counsel elected to present absolutely none of mr maury's ineffective assistance of counsel claims not only did counsel not follow this court's mandate but this court or the council was arguably completely ineffective for not what what part of this court's mandate directed crankle counsel to accept all arguments that the defendant wished to raise well that would be governed by downs itself uh no and that's what our mandate approved downs is that what you're saying no your mandate didn't approve downs but it did require counsel to investigate and present mr maury's claims of ineffective assistance of counsel which included a claim that this court already uh may i just finish this one answer yeah thank you honors um it included a claim that this court for this court found that uh trial counsel was possibly neglectful of mr maury's case that claim should have been heard and counsel didn't raise it and that rendered his representation not only violative of downs but also ineffective okay thank you mr wilson uh thank you both the case will be taken under advisement and a written decision will be issued the court stands in recess